UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- - -x

GLENN LEGER, on behalf of himself and all others     :     16 Civ. 6545 (PKC) (PK)
similarly situated,     :

                    Plaintiff,     :     **ECF**

                    :

         - against -     :

                    :

CONRAD KALITTA and KALITTA AIR, LLC,     :

                    :

                Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- - -x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS TO (A) DISMISS THE COMPLAINT AGAINST CONRAD KALITTA FOR LACK OF PERSONAL JURISDICTION, (B) DISMISS THE FLSA CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION, (C) DISMISS THE REMAINING CLAIMS FOR IMPROPER VENUE, OR ALTERNATIVELY (D) TRANSFER THE CASE TO THE <u>EASTERN DISTRICT OF MICHIGAN PURSUANT TO 28 U.S.C. § 1404(A)</u>

EPSTEIN BECKER & GREEN, P.C.

David W. Garland
Shira M. Blank
250 Park Avenue
New York, New York 10003
Telephone: (212) 351-4500
Facsimile: (212) 878-8600
dgarland@ebglaw.com
sblank@ebglaw.com

*COUNSEL FOR DEFENDANTS*
*CONRAD KALITTA AND KALITTA AIR*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

      A.    The Parties. ............................................................................................ 3

              1.    The Plaintiffs. ........................................................................... 3

              2.    Kalitta Air. ................................................................................ 3

              3.    Conrad Kalitta. ......................................................................... 5

      B.    Kalitta Air "refers to itself as a 'leading provider of air cargo transportation.'" .......... 6

      C.    Leger's Work As A Mechanic for the Company. ........................................ 7

      D.    "Hazardous Duty Pay" ............................................................................ 8

ARGUMENT ......................................................................................................... 9

I.        THE COURT LACKS PERSONAL JURISDICTION OVER MR. KALITTA. .............. 9

      A.    Applicable Law. ..................................................................................... 9

      B.    The Court Does Not Have Personal Jurisdiction Over Conrad Kalitta. ..................... 10

II.      THE FLSA CLAIM SHOULD BE DISMISSED FOR LACK OF SUBJECT
        MATTER JURISDICTION BECAUSE THE COMPANY IS A "COMMON
        CARRIER BY AIR" WITHIN THE MEANING OF THE RLA AND LEGER IS
        THEREFORE EXEMPT FROM THE FLSA'S OVERTIME REQUIREMENTS. .. 11

      A.    Applicable Law. ..................................................................................... 11

      B.    Leger Is Exempt From The FLSA's Overtime Requirements. ................................. 11

              1.    The Company Is A "Common Carrier By Air." ............................... 11

              2.    The Company Is Engaged In Interstate Or International Air Transportation. 14

              3.    Leger's Work Was Related To Air Transportation. ........................... 14

III.     LEGER'S HAZARD PAY CLAIMS ARE NOT PROPERLY
        VENUED IN THE EASTERN DISTRICT OF NEW YORK. .................................. 15

      A.    Applicable Law. ..................................................................................... 15

      B.    The Eastern District of New York Is Not The
          Proper Venue For Leger's Hazard Pay Claims. .......................................... 16

i

IV.       IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER
          THE CASE TO THE EASTERN DISTRICT OF MICHIGAN
          FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES....................... 17

   A.    Applicable Law................................................................................................ 17

   B.    The Balance of Convenience Analysis Weighs Strongly In Favor Of Transfer......... 18

         1.    The Plaintiff's Choice of Forum .................................................... 18

         2.    The Convenience of Witnesses and Parties. .................................... 19

         3.    The Locus of Operative Facts. ...................................................... 21

         4.    Interest of Justice and Judicial Economy........................................ 22

         5.    Remaining Factors. ...................................................................... 23

CONCLUSION.............................................................................................................. 24

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
    860 F. Supp. 128 (S.D.N.Y.1994) ...................................................................18, 19

*Agency Rent A Car Sys. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996)...............................................................................................9

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007)..........................................................................23

*Caggianiello v. FSG PrivatAir, Inc.*,
    2007 U.S. Dist. LEXIS 28904 (D. Conn. 2007) ..........................................11, 12, 13

*Capital Curr. Exch. v. National Westminster Bank*,
    155 F.3d 603 (2d Cir. 1998)...............................................................................17, 18

*Cerussi v. Union Coll.*,
    144 F. Supp. 2d 265 (S.D.N.Y.2001)...........................................................................19

*Cunningham v. Elec. Data Sys. Corp.*,
    2010 U.S. Dist. LEXIS 32112 (S.D.N.Y. 2010) ................................................11, 13

*CutCo Indus. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986)................................................................................9, 10

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005)...............................................................................15, 16

*Elliot Flying Serv., Inc.*,
    9 NMB 146 (1981) ......................................................................................................13

*Fuji Photo Film Co. v. Lexar Media, Inc.*,
    415 F. Supp. 2d 370 (S.D.N.Y. 2006)..........................................................................21

*Gaines, Emhof, Metzler & Kriner v. Nisberg*,
    843 F. Supp. 851 (W.D.N.Y. 1994) .............................................................................16

*Glass v. S&M NuTec, LLC*,
    456 F. Supp. 2d 498 (S.D.N.Y. 2006).......................................................19, 20, 21, 23

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005)...........................................................................................21

*Herbert Ltd. P'ship v. Electronic Arts Inc.*,
    325 F. Supp. 2d 282 (S.D.N.Y. 2004)......................................................................17, 18

*Hernandez v. Graebel Van Lines*,
    761 F. Supp. 983 (E.D.N.Y. 1991) ....................................................................18, 19, 21, 22

*Hsin Ten Enters. USA, Inc. v. Clark Enters.*,
    138 F. Supp. 2d 449 (S.D.N.Y. 2000)......................................................................15, 17

*International Healthcare v. Global Healthcare*,
    470 F. Supp. 2d 345 (S.D.N.Y. 2007)..........................................................................10

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998)...............................................................................9

*Kamen v. American Tel. & Tel. Co.*,
   791 F.2d 1006 (2d Cir.1986).............................................................................6

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)..............................................................................6

*Penguin Grp. (USA) Inc. v. American Buddha*,
   609 F.3d 30 (2d Cir. 2010)................................................................................9

*In re Rocky Mountain Holdings, LLC d/b/a Eagle Airmed of Ariz.*,
   26 NMB 132 (1999).....................................................................................11, 13

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009)..........................................................9, 10

*Slavens v. Scenic Aviation, Inc.*,
   221 F.3d 1353 (10th Cir. 2000) .......................................................................13

*Terminal Taxi Cab v. Kutz*,
   241 U.S. 252 (1916)........................................................................................12

*Thibodeaux v. Executive Jet Int'l Inc.*,
   328 F.3d 742 (5th Cir. 2003).......................................................................11, 12

*Underdog Trucking, LLC v. Verizon Servs. Corp.*,
   2010 U.S. Dist. LEXIS 72642 (S.D.N.Y. 2010).................................................9

*United States v. Nature's Farm Prods.*,
   2004 U.S. Dist. LEXIS 8485 (S.D.N.Y. 2004).............................................22, 23

*Valdivieso v. Atlas Air, Inc.*,
   305 F.2d 516 (11th Cir. 2002) .........................................................................12

*Vassallo v. Niedermeyer*,
   495 F. Supp. 757 (S.D.N.Y. 1980) ..................................................................23

*In re Warrick*,
   70 F.3d 736 (2d Cir. 1995)..........................................................................18, 19

*Woodke v. Dahm*,
   70 F.3d 983 (8th Cir. 1995) .............................................................................16

*Woolsey v. Nat'l Transp. Bd*,
   993 F. 2d. 516 (5th Cir. 1993) .........................................................................12

**Rules and Statutes**

29 C.F.R. § 778.112 ..............................................................................................11

28 U.S.C. § 1391...................................................................................................15

28 U.S.C. § 1404(a) ...........................................................................................1, 17

29 U.S.C. § 213(b)(3) ...........................................................................................11

45 U.S.C. § 151, *et seq.*............................................................................................2, 11, 13, 14

N.Y. C.P.L.R. 301 ...................................................................................................................10

N.Y. C.P.L.R. 302(a)(1)......................................................................................................9, 10

Fed. R. Civ. P. 12(b) ..........................................................................................................1, 15

**Other Authorities**

*Application of Kitty Hawk Int'l, Inc.*,
    2000 DOT Av. LEXIS 603 (U.S. DOT Nov. 29, 2000) ............................................14

*Application of Kalitta Air, L.L.C.*,
    2003 DOT Av. LEXIS 473 (U.S. DOT June 19, 2003)............................................14

*Federal Judicial Caseload Statistics 2016, Comparison of Districts,*
    http://www.uscourts.gov/sites/
    default/files/data_tables/fcms_na_distcomparison0930.2016.pdf ...........................22

*Federal Judicial Caseload Statistics 2016,*
    http://www.uscourts.gov/sites/default/files/data_tables/jb_c1_0930.2016.pdf .....................22

## **PRELIMINARY STATEMENT**

Plaintiff Glenn Leger, a former employee of defendant Kalitta Air, LLC ("Kalitta Air" or the "Company"), alleges that Kalitta Air and defendant Conrad Kalitta ("Mr. Kalitta"), violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA") by failing to pay him, and other employees who are purportedly similarly situated to him, overtime.  Leger also alleges that he and putative class employees traveled in connection with their employment to areas designated as "combat zones" by the United States and that Defendants failed to provide them with "hazard pay" for that work; based on those allegations, he pleads common law claims of unjust enrichment (Count II), breach of third party beneficiary contract (Count III), money had and received (Count IV), conversion (Count V), *quantum meruit* (Count VI), and fraud/fraudulent concealment (Count VII) (collectively, the "Hazard Pay Claims").

Defendants submit this memorandum in support of their motion to dismiss the Complaint against Mr. Kalitta, pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction; the FLSA claims against them both, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction; and the Hazard Pay Claims against them both, pursuant to Federal Rule of Civil Procedure 12(b)(3), for improper venue; or alternatively, to transfer this action to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

As set forth in greater detail below, the Court should dismiss the Complaint against Mr. Kalitta for lack of personal jurisdiction because the causes of actions pleaded in the Complaint do not arise out of any alleged activities conducted by Mr. Kalitta in New York upon which personal jurisdiction could be based.

Separate and apart from the jurisdiction issue as to Mr. Kalitta, Leger's FLSA claim should be dismissed for lack of subject matter jurisdiction.  Kalitta Air is a "common carrier by

air" within the meaning of Title II of the Railway Labor Act, 45 U.S.C. § 151 ("RLA"), and as such, Leger is exempt from the FLSA's overtime requirements.

Upon dismissal of the FLSA claim, only the Hazard Pay Claims will remain. These claims are subject to dismissal for improper venue because New York is not the forum where a substantial part of the events giving rise to the Hazard Pay Claims took place. In the alternative, the Court should transfer the case to the Eastern District of Michigan, as virtually all of the witnesses concerning the Hazard Pay Claims dispute are found there, the locus of all operative facts is there, and the interest of justice favors transfer. Neither Leger nor the individuals who filed consents to become party plaintiffs as to the FLSA claim resides in this district or anywhere else in New York.

## STATEMENT OF FACTS[1]

### A.     The Parties.

#### 1.     The Plaintiffs.

According to the Complaint, Leger is a resident of the State of New Jersey.  (Garland Decl. Ex. A) (hereinafter "Compl." at ¶ 8).[2]  He alleges that he is a mechanic formerly employed by Kalitta Air.  (Compl. ¶ 2).

On January 27, 2017, Daniel Johnson and Reggie Russell, Jr. each filed a "Consent to Become Party Plaintiff" as to the FLSA claims.  (*See* ECF Docket Nos. 10-11).[3]  Johnson, a former employee of Kalitta Air, resided in Minnesota throughout his employment with the Company and continues to reside there today.  (Garland Decl. Ex. B at ¶ 4).  Russell, another former employee of the Company, resided in Georgia while employed by Kalitta Air, and he currently resides there.  (Garland Decl. Ex. C at ¶ 2).  Johnson and Russell allege in their Declarations that Kalitta Air employed them as "airplane mechanics." (Garland Decl. Exs. B at ¶ 3, C at ¶ 3).

#### 2.     Kalitta Air.

As the Complaint pleads, Kalitta Air is a "leading provider of air cargo transportation" and a Michigan company.  (Compl. ¶¶ 2 and 16).  The Company is headquartered in Ypsilanti, Michigan, which is the location of its principal place of business. (Kalitta Decl. at ¶ 3).[4]

---

[1] Defendants accept the well-pleaded allegations of the Complaint as true (to the extent not contradicted by any material incorporated therein by reference) solely for purposes of this motion.

[2] A copy of the Complaint is annexed as Exhibit A to the accompanying Declaration of David W. Garland.  References to exhibits attached to the Garland Declaration are designated as "(Garland Decl. Ex. __)."

[3] The Declarations of Daniel Johnson and Reggie Russell were served upon Defendants in support of Leger's unfiled motion seeking conditional certification, which is not pending before the Court at this time.

[4] References to the accompanying Declaration of Conrad Kalitta are designated as "(Kalitta Decl. at ¶ __)."

While the Company operates planes which fly in and out of John F. Kennedy Airport in New York, the Company's employees are not assigned to work at specific airports; rather, their work location is wholly dependent on the location that Kalitta Air's planes are scheduled to flying in or out of.  (Nolff Decl. at ¶ 6).[5]  The Company does not have a New York office. (Kalitta Decl. at ¶ 5).  The Company leases hangar space from a private company at John F. Kennedy Airport, and airplane mechanics are assigned to work there only when a Kalitta Air flight is flying in and of that airport.  (Kalitta Decl. at ¶ 5; Nolff Decl. at ¶ 6).

The negotiation and execution of contracts for flights flying in and out of John F. Kennedy airport, as well as flights operating out of all other airports in the United States, are performed in Ypsilanti, Michigan by Doyle C. Sanderlin, where he works (and also lives). (Sanderlin Decl. at ¶¶ 3, 4, 7).[6]  These contracts are entered into between the Company and the federal government, as well as with private companies, and provide for the Company to pick up and drop off cargo to various locations throughout the United States, and around the world. (Sanderlin Decl. at ¶¶ 3, 4).   Kalitta Air's flight schedules for planes flying in and out of John F. Kennedy Airport are set in Ypsilanti, Michigan. (Sanderlin Decl. at ¶ 5).

Kalitta Air's Human Resources Department is located at the Company's headquarters in Ypsilanti, Michigan.  (Stockton Decl. at ¶ 5). The Human Resources Department is responsible for maintaining all employee personnel files, including salary information, and pay rates. (Stockton Decl. at ¶ 4).  Kalitta Air's payroll department is also located at its headquarters in

---

[5] References to the accompanying Declaration of Mark Nolff are designated as "(Nolff Decl. at ¶ __)."
[6] References to the accompanying Declaration of Doyle C. Sanderlin are designated as "(Sanderlin Decl. at ¶ __)."

Ypsilanti, Michigan which is where employee pay statements are generated.  (Stockton Decl. at ¶ 6).[7]  Employees' W-2 wage and tax statements are prepared in Michigan. (Stockton Decl. at ¶ 6).

Personnel decisions regarding airplane mechanics at John F. Kennedy Airport are made by Mark Nolff, the Company's Director of Maintenance, who also works at its Ypsilanti, Michigan headquarters.  (Nolff Decl. at ¶ 5; Kalitta Decl. at ¶ 7).  Mr. Nolff also sets the airplane mechanics' work schedules. (Nolff Decl. at ¶ 5; Kalitta Decl. at ¶ 7).

### 3.   Conrad Kalitta.

Leger alleges that the Company is "100% owned by defendant Conrad Kalitta." (Compl. ¶ 16).[8]  Mr. Kalitta resides in Wayne County, Michigan. (Kalitta Decl. at ¶ 4).

Mr. Kalitta does not conduct or transact any business in New York on his own behalf. He does not maintain an office in New York (the Company does not have a New York office), and is not regularly present there. (Kalitta Decl. at ¶¶ 5-6).

Mr. Kalitta does not own property in New York and he does not maintain a bank account in New York.  (*Id.* at ¶ 8).

The Complaint conclusorily alleges that Mr. Kalitta "exercises control over the Mechanics by, among other things, his involvement in their hiring and firing, setting pay rates, setting schedules, and determining the duties of and personnel policies applicable to the Mechanics." (Compl. ¶ 17).  In fact, however, these tasks are completed by Mr. Nolff, the Director of Maintenance. (Nolff Decl. at ¶¶ 5, 6; Kalitta Decl. at ¶ 7).

---

[7] References to the accompanying Declaration of Lauri Stockton are designated as "(Stockton Decl. at ¶ ___)."
[8] As reflected in Kalitta Air's Rule 7.1 Disclosure Statement, it is actually owned by Connie Kalitta Holdings, Inc. (Dkt. No. 13).

**B.      Kalitta Air "refers to itself as a 'leading provider of air cargo transportation.'"**

Leger alleges that "Kalitta Air refers to itself as a 'leading provider of air cargo transportation.'" (Compl. ¶ 3).  Indeed, on its website (which Leger's counsel acknowledged during the pre-motion conference on March 7, 2017 was the source of this allegation), Kalitta Air describes itself as "a leading provider of air cargo transportation."  (Garland Decl. Ex. D).[9] Kalitta Air's website also states that it "offer[s] both scheduled and chartered transportation services worldwide."  (Garland Decl. Ex. D).  The website states that the Company is committed "to providing [its] customers with the most cost effective and complete on-demand air cargo services available in the industry." (Garland Decl. Ex. E).[10]  On its website, the Company further states that it is "expanding [its] fleet to meet the growing demands of [its] customer needs," and advertises its ability and "flexibility to meet [a customer's] timeline."  (Garland Decl. Ex. F).[11] The Company's customers include the U.S. government as well as private companies:

> We not only fly the everyday cargo of boxes crates and containers, we've moved everything [from] cows, horses, whales, automobiles, helicopters, airplanes, tanks, oil rig drilling equipment, ocean liner anchors, and government, DOD and military charters. If you need it moved anywhere on the globe, and you need it there fast, we are your airline.

*Id.*

---

[9] A copy of Kalitta Air's home page is annexed to the Garland Declaration as Exhibit D, and may also be accessed at http://www.kalittaair.com (last accessed March 16, 2017).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986)).  Defendants request that the Court take judicial notice of Kalitta Air's website.
[10] A copy of Kalitta Air's "About Kalitta" webpage is annexed to the Garland Declaration as Exhibit E for the Court's convenience.  This webpage may be found at http://www.kalittaair.com/about-kalitta/ (last accessed March 16, 2017).
[11] A copy of Kalitta Air's "Fleet" webpage is annexed to the Garland Declaration as Exhibit F.  This webpage may be found at http://www.kalittaair.com/fleet/ (last accessed March 16, 2017).

Kalitta Air's flight schedule and instructions for those who wish to travel on its flights are also available on the website.  (Garland Decl. Exs. G and H).[12]

Kalitta Air is on the list of "U.S. Certified Air Carriers" published by the Office of the Secretary of Transportation's (Garland Decl. Ex. I at 3)[13], and it has been issued an Air Carrier Certificate from the U.S. Department of Transportation, Federal Aviation Administration, which certifies that the Company is "authorized to operate as an air carrier and conduct common carriage operations in accordance with the [Federal Aviation Act of 1958] . . ." (Garland Decl. Ex. J).

Leger alleges that "Kalitta contracts with the U.S. Transportation Command to pick up and deliver cargo to the U.S. armed forces in . . . areas that have been designated 'combat zones' by the President of the United States" (Compl. ¶ 3), including Afghanistan, Pakistan, Qatar, Bahrain and Kuwait (Compl. ¶ 10).  Consistent with the Company's website, Leger also alleges that Kalitta Air's aircraft "pick[] up and deliver[] cargo, including military cargo and civilian cargo for private companies such as the Apple iPhone." (Compl. ¶ 10).

### C.   Leger's Work As A Mechanic for the Company.

Leger alleges that, as a mechanic, he "performed repair and maintenance work on [Kalitta Air's] planes, and traveled on those planes to various locations throughout the world including Afghanistan, Pakistan, [ ] Qatar," Bahrain and Kuwait.  (Compl. ¶¶ 8, 10).  Leger alleges that

---

[12] A copy of the Kalitta Air's flight schedule is annexed to the Garland Declaration as Exhibit G.  This webpage may be found at http://www.kalittaair.com/schedule/ (last accessed March 16, 2017). Additionally, a copy of Kalitta Air's policy and procedures for those who would like to travel on a Kalitta Air aircraft and the "Travel Request" form are annexed to the Garland Declaration as Exhibit H.  The webpage may be found at http://www.kalittaair.com/supernumary-travel/ (last accessed March 16, 2017).
[13] A copy of the U.S. Department of Transportation's Certificated Air Carriers List is attached to the Garland Declaration as Ex I.  This list may also be found at http://www.dot.gov/policy/aviation-policy/certificated-air-carriers-list (identifying Kalitta Air, L.L.C. (d/b/a American International Airways), 818 Willow Run Airport, Ypsilanti, MI, as a "Certificated Air Carrier") (last updated May 21, 2015) (last accessed March 16, 2017), of which Defendants request that the Court take judicial notice.

"[o]nce assigned to a plane, [he] stayed with the plane, was on call to fix any problems that arose with the plane, and traveled on the plane to various locations throughout the world."  (Compl. ¶ 30).   Leger further alleges that "he traveled with the plane as it picked up and delivered military cargo and civilian cargo for private companies such as the Apple iPhone."  (Compl. ¶ 10).

      D.      **<u>"Hazardous Duty Pay."</u>**

Leger alleges that "hazardous duty pay" is provided "[w]hen United States employees work in a combat zone" "for putting their lives at risk to serve their country (Compl. ¶ 38), and that "civilian contractors working for the federal government may also be provided hazard pay that must be passed on to employees."  (Compl. ¶ 39).  Leger alleges that "Defendants entered into contracts with the federal government that provide for hazard pay above and beyond the price for Defendants' services," (Compl. ¶ 74), and that Kalitta Air was paid $27,000 for flights flying "into and out of combat zones." (Compl. ¶ 40).  Leger alleges that Defendants "concealed" that they received hazard pay (Compl. ¶ 46), and the hazard pay should have been provided to Leger and other allegedly similarly situated employees, for work performed overseas in combat zones. (Compl. ¶ 45).

Leger further alleges that pay statements which were provided to him, and the "Hazard Pay Class," and "any offer of employment in which a pay rate was stated" constitute a "fraudulent statement or omission" by Defendants. (Compl. ¶ 93).

## ARGUMENT

### I.    THE COURT LACKS PERSONAL JURISDICTION OVER MR. KALITTA.

#### A.    Applicable Law.

The plaintiff bears the burden of making a *prima facie* showing that the court has personal jurisdiction with respect to the claims against an individual defendant. *Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, (2d Cir. 2010). "[C]onclusory allegations lacking factual specificity do not satisfy this burden." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 393 (S.D.N.Y. 2009) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184-85 (2d Cir. 1998).

A non-resident defendant can be subject to jurisdiction in New York "under either New York's general jurisdiction statute, ["CPLR"] § 301, or its long-arm jurisdiction statute, [CPLR] § 302." *RSM Prod. Corp.*, 643 F. Supp. 2d at 400.  Under CPLR § 301, "an individual cannot be subject to jurisdiction . . . unless he is doing business in New York *on his own behalf* rather than on behalf of a corporation . . . on a systematic and continuous basis." *Id.*  (citations omitted; emphasis in original).

CPLR 302(a)(1) permits a court in New York to exercise personal jurisdiction over a non-domiciliary who "transacts business" within the state provided that the plaintiff's claim against the non-domiciliary arises out of that business activity. *Agency Rent A Car Sys. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996); *Underdog Trucking, LLC v. Verizon Servs. Corp.*, 2010 U.S. Dist. LEXIS 72642, at *6 (S.D.N.Y. 2010) (dismissing claims against the individual defendants for lack of personal jurisdiction where the complaint did not include any grounds for the assertion of personal jurisdiction in New York over the defendants under CPLR § 302(a)).  A non-domiciliary transacts business when "he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of

9

its laws." *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (citations omitted).

**B.      The Court Does Not Have Personal Jurisdiction Over Conrad Kalitta.**

The Court should dismiss all claims against Mr. Kalitta because he is not subject to personal jurisdiction in New York.

The Complaint does *not* allege that Mr. Kalitta did any business in New York *on his own behalf on a systematic and continuous basis*; thus jurisdiction over him under CPLR 301 does not exist. *See RSM Prod. Corp.,* 643 F. Supp. 2d at 400.

As to specific jurisdiction under CPLR § 302(a)(1), the Complaint does *not* plead that Mr. Kalitta reached into New York to transact or conduct business, that he ever communicated or interacted with Leger in any way, engaged in any activity in New York or that he even entered New York. *See International Healthcare v. Global Healthcare*, 470 F. Supp. 2d 345, 359 (S.D.N.Y. 2007) ("Business transactions must entail purposeful activity in the state that bears a substantial nexus with the claim.").

The Complaint contains nothing but conclusory allegations which lack "factual specificity" that do not satisfy the plaintiff's burden. *RSM Prod. Corp.,* 643 F. Supp. 2d at 393. Leger alleges that Mr. Kalitta, the "owner" of the Company was involved in the hiring and firing of mechanics, setting their pay rates and schedules, and determining personnel duties. *See* Compl. ¶¶ 16, 17; (Kalitta Decl. at ¶7).  Absent from this allegation is any claim that *Mr. Kalitta* himself specifically transacted or conducted business in *New York* in order to confer general or specific jurisdiction over him.  Since the Complaint does not allege any facts asserting any grounds for personal jurisdiction over Mr. Kalitta in New York, it should be dismissed as to him. (Kalitta Decl. at ¶¶ 3-8).

II.     **THE FLSA CLAIM SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE THE COMPANY IS A "COMMON CARRIER BY AIR" WITHIN THE MEANING OF THE RLA AND LEGER IS THEREFORE EXEMPT FROM THE FLSA'S OVERTIME REQUIREMENTS.**

A.     **Applicable Law.**

While the FLSA generally requires employers to pay employees "time and one-half" of their regular rate of pay for all hours worked in excess of forty in a work week (29 C.F.R. § 778.112), the FLSA's overtime requirements do not apply to "any employee of a carrier by air subject to the provisions of [T]itle II of the Railway Labor Act," 45 U.S.C. § 151, *et seq.*  *See* 29 U.S.C. § 213(b)(3).

Three conditions must be satisfied in order for the RLA's "air carrier exemption" to apply: (1) the employer is a common carrier by air; (2) the employer is engaged in interstate or international air transportation; and (3) the employees' work is related to air transportation. *Caggianiello v. FSG PrivatAir, Inc.*, 2007 U.S. Dist. LEXIS 28904, at *2-3 (D. Conn. 2007) (citing *Thibodeaux v. Executive Jet Int'l Inc.*, 328 F.3d 742, 750 (5th Cir. 2003)); *In re Rocky Mountain Holdings, LLC d/b/a Eagle Airmed of Ariz.*, 26 NMB 132 (1999).

B.     **Leger Is Exempt From The FLSA's Overtime Requirements.**

On its face, the Complaint satisfies all three conditions of the common carrier exemption and accordingly, the Court lacks subject matter jurisdiction over the FLSA claim.

1.     **The Company Is A "Common Carrier By Air."**

As to the first condition, while neither the FLSA nor the RLA define the term "common carrier by air," and the Second Circuit has not defined what constitutes a "common carrier by air" for purposes of the RLA, the RLA plainly applies to American and other commercial carriers.  *Cunningham v. Elec. Data Sys. Corp.*, 2010 U.S. Dist. LEXIS 32112, at * 11 (S.D.N.Y. 2010) (citing 45 U.S.C. § 181).  Courts which have addressed the issue have determined that the

11

"crucial determination in assessing the status of a carrier is whether the carrier has held itself out to the public or a definable *segment* of the public as being willing to transport for hire, indiscriminately." *Caggianiello v. FSG PrivatAir, Inc.*, 2007 U.S. Dist. LEXIS 28904, at \*2-3 (D. Conn. 2007) (citing *Valdivieso v. Atlas Air, Inc.,* 305 F.2d 516, 523 (11th Cir. 2002) (emphasis in original); *see also Woolsey v. Nat'l Transp. Bd*, 993 F. 2d. 516, 523 (5th Cir. 1993); *Thibodeaux,* 328 F.3d at 750.  In *Valdivieso,* in finding that the defendant was a common carrier, the court noted that the carrier "[was] licensed by the U.S. Department of Transportation as a common carrier; [and] furthermore, other courts [had] considered [defendant] a common carrier under the RLA." *Valdivieso*, 305 F.3 at 1286.

In *Caggianiello*, the court granted the defendants' motion to dismiss the plaintiffs' FLSA claims for lack of subject matter jurisdiction where, as here, the defendants demonstrated that the company "held itself out to the public as a provider of charter flights...." *Caggianiello*, 2007 U.S. Dist. LEXIS 28904, at \*5-6.  The *Caggianiello* court rejected the plaintiffs' "unpersuasive" argument that the company was not a common carrier by air because it did not hold itself out for hire indiscriminately.  *Id.* at 5.  The court held that where "the carrier held itself out to the public of a definable *segment* of the public as being willing to transport for hire," the defendant is considered a common carrier by air.  *See Caggianiello*, 2007 U.S. Dist. LEXIS 28904, at \* 5 (quoting *Woolsey*, 993 F.2d at 523); *see also Valdivieso,* 305 F.3d at 1285 (the RLA does not require an air carrier to provide its services to the public at large, only to those who agree to abide by its terms and prices); *Terminal Taxi Cab v. Kutz*, 241 U.S. 252, 255 (1916) (no carrier is required to, or does, serve all of the public, rather "customers are limited by place, requirements, ability to pay and other facts" ). The "definable segment of the public" may be "a group of

prospective customers who the company has determined do not pose an unacceptable financial or security risk." *Caggianiello*, 2007 U.S. Dist. LEXIS 28904, at * 5.

Further, the National Mediation Board ("NMB") which interprets, administers and enforces the RLA, has held that a carrier that has been issued a Federal Aviation Administration ("FAA") certificate or letter of registration and is engaged in interstate operations is a "common carrier by air" and subject to the RLA. *See Elliot Flying Serv., Inc.*, 9 NMB 146 (1981); *In re Rocky Mountain Holdings, LLC*, 26 NMB 132; *Slavens v. Scenic Aviation, Inc.*, 221 F.3d 1353, (10th Cir. 2000).

The Complaint – which Leger's counsel has conceded is based on Kalitta Air's website – alleges that Kalitta Air "refers to itself as a leading provider of air cargo transportation." (Compl. ¶ 3); (*see also* Garland Decl. at Ex. B). Leger also alleges that the Company is a "freight carrier" which "has over twenty aircraft," and that the Company "sub-contracts for other cargo carriers." (Compl. ¶ 16); *see Cunningham*, 2010 U.S. Dist. LEXIS 32112, at * 11; 45 U.S.C. § 181.

As the allegations in the Complaint demonstrate, Kalitta Air solicits business from a definable segment of the public, and states on its website that it is "willing to transport for hire." *Caggianiello*, 2007 U.S. Dist. LEXIS 28904, at * 5. The Company advertises that it can transport various types of cargo for private companies and the federal government. (Compl. ¶ 10); (Garland Decl. at Exs. D, E, F). The Company also provides its policies and procedures to those who would like to travel on its planes, and its flight schedules are publicly available. (*See* Garland Decl. Exs. G and H).

Additionally, the Company possesses the requisite Department of Transportation certification that authorizes it "to operate as an air carrier and conduct common carriage

13

operations," and it is on the U.S. Certificated Air Carriers list maintained by the U.S. Department

of Transportation ("USDOT").  (Garland Decl. Exs. I at 3, J).[14]

**2.     The Company Is Engaged In Interstate Or International Air Transportation.**

As to the second condition, the Complaint alleges that the Company is engaged in

"international air transportation."  *See* 45 U.S.C. § 181.  Leger alleges that the Company

"contracts with the U.S. Transportation Command to pick up and deliver cargo to the U.S. armed

forces in … areas that have been designated 'combat zones' by the President of the United

States," and that Kalitta Air's planes travel to destinations around the world.  (Compl. ¶¶ 3, 10

and 33).

**3.     Leger's Work Was Related To Air Transportation.**

As to the third condition, Leger alleges that his work as a mechanic was "related to air

transportation."  *See* 45 U.S.C. § 181.  Leger alleges that he "performed repair and maintenance

work on [Kalitta Air's] planes, and traveled on those planes to various locations throughout the

world . . ." (Compl. ¶¶ 8, 10).  Leger alleges that "[o]nce assigned to a plane, [he] stayed with the

plane, was on call to fix any problems that arose with the plane, and traveled on the plane to

---

[14] In 2000, the USDOT transferred the Certificate of Public Convenience and Necessity for scheduled interstate cargo air transportation to Kalitta Air from its predecessor, Kitty Hawk Int'l, Inc.  *See Application of Kitty Hawk Int'l, Inc.*, 2000 DOT Av. LEXIS 603 (U.S. DOT Nov. 29, 2000).  In so doing, the USDOT confirmed that Kalitta Air possesses an FAA Air Carrier Certificate and Operations Specifications.  *Id.*  Subsequently, the USDOT authorized Kalitta Air to engage in interstate and foreign commerce between points in the United States and points in Hong Kong, United Kingdom, Kuwait, Jordan and Iraq.  *Application of Kalitta Air, L.L.C.*, 2003 DOT Av. LEXIS 473 (U.S. DOT June 19, 2003).  Moreover, the NMB, which only has jurisdiction to preside over individuals and entities subject to the RLA, has regularly exercised jurisdiction over the Company, and exercised jurisdiction over the Company throughout Leger's employment.  *See, e.g.,* http://www.nmb.gov/archive/activ-rpts/weekly-activity-report-may-9-2016-may-13-2016/ (last accessed April 5, 2017) (NMB's weekly activity report from May 9, 2016 – May 13, 2016 showing that the NMB was mediating a dispute between Kalitta Air and the union IBT); http://www.nmb.gov/archive/activ-rpts/od082313/ (last accessed April 5, 2017) (NMB's weekly activity report from August 19, 2013- August 23, 2013 showing that the NMB was mediating a dispute between Kalitta Air and the union IBT with respect to pilots and flight engineers).

various locations throughout the world." (Compl. ¶ 30). Leger further alleges that "he traveled with the plane as it picked up and delivered military cargo and civilian cargo for private companies such as the Apple iPhone." (Compl. ¶ 10).

Based on the foregoing, Leger is exempt from the FLSA's overtime requirements, and the FLSA claims in Count I of the Complaint should be dismissed.

## III. LEGER'S HAZARD PAY CLAIMS ARE NOT PROPERLY VENUED IN THE EASTERN DISTRICT OF NEW YORK.

Upon dismissal of FLSA claim, only Leger's Hazard Pay Claims will remain. Those claims should be dismissed for improper venue because all of the acts that allegedly gave rise to those claims, pleaded in Counts II through VII of the Complaint, occurred in Ypsilanti, Michigan.

### A. Applicable Law.

Federal courts are authorized, upon proper showing, to transfer or dismiss an action where venue in that court is improper. *See* Fed. R. Civ. P. 12(b)(3). Venue in a diversity action is governed by 28 U.S.C. § 1391. Where a party brings more than one claim, "venue must be established for each separate claim in a complaint." *Hsin Ten Enters. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 457 (S.D.N.Y. 2000).

The Complaint asserts that venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2), which provides venue in each "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) (quotations omitted). Courts undertake a two-part inquiry to determine whether venue is appropriate under § 1391(b)(2). First, the court must "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." *Hsin*, 138 F. Supp. 2d at 457. Second, the court determines whether "a substantial part of those acts or

omissions occurred in the district where suit was filed." *Id.* (internal alterations, citations, and quotations omitted).  "Substantiality" is more a qualitative than a quantitative inquiry.  *Daniel*, 428 F.3d at 432-33.  "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue."  *Id.* at 433.

The venue inquiry "focus[es] on relevant activities of the defendant, not of the plaintiff." *Id.* at 432 (citing *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)); se*e also Gaines, Emhof, Metzler & Kriner v. Nisberg*, 843 F. Supp. 851, 854 (W.D.N.Y. 1994) ("[t]he phrase 'events or omissions giving rise to the claim' in 28 U.S.C. § 1391(b)(2) suggests a focus on the actions of the defendant, not on those of the plaintiff").

### B.    The Eastern District of New York Is Not The Proper Venue For Leger's Hazard Pay Claims.

Leger alleges that venue is proper in this district "because a substantial part of the events giving rise to [his] claims occurred in this District, including but not limited to [his] employment with Defendants at John F. Kennedy Airport."  (Compl. ¶ 7).  This allegation is insufficient to establish that venue is appropriate with respect to the Hazard Pay Claims where all of the alleged acts that gave rise to them occurred in Ypsilanti, Michigan, where the Company is headquartered.

In support of these claims, Leger – a New Jersey resident – alleges that (1) hazard pay may be provided for individuals going into countries that are "designated combat zones" (Compl. ¶¶ 38, 39, 42); (2) "Defendants entered into contracts with the federal government that provide for hazard pay above and beyond the price for Defendants' services" (Compl. ¶ 74); (3) the Company received hazard pay for flights flying "into and out of combat zones" (Compl. ¶ 40); (4) Defendants "concealed" that hazard pay was received (Compl. ¶ 46); (5) hazard pay should

have been paid for *work Leger performed in overseas combat zones* (Compl. ¶ 45); and (6) Kalitta Air "is a Michigan limited liability company that is 100% owned by defendant Conrad Kalitta." (Compl. ¶ 16).

According to the Complaint, in the event that the Company received hazard pay from the federal government, it would only have received this pay for flights *flying in and out of countries that Leger alleges were "combat zones."* (Compl. ¶ 40) (emphasis added). Any hazard pay that Leger would have allegedly been entitled to would have been earned overseas once Leger entered these "designated combat zones," not in New York. (Compl. ¶¶ 38, 39, 40, 42 and 45). Therefore, Leger cannot plausibly claim that "a substantial part" of the acts giving rise to the Hazard Pay Claims occurred in the district. *Hsin*, 138 F. Supp. 2d at 457.

Simply stated, Leger is alleging that a Michigan company failed to pay compensation to a New Jersey resident for work performed outside of the United States. Accordingly, Leger's Hazard Pay Claims should be dismissed for improper venue.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THE CASE TO THE EASTERN DISTRICT OF MICHIGAN FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES.

Even if the Eastern District of New York could be considered an appropriate venue, this action should be transferred to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

### A. Applicable Law.

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The initial inquiry is whether the case might have been brought in the proposed transferee district. *Herbert Ltd. P'ship v. Electronic Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004). The Court must therefore determine whether "(1) the defendants are subject to

service of process there; and (2) the forum permits litigation of the subject matter of the dispute."

*Capital Curr. Exch. V. National Westminster Bank*, 155 F.3d 603, 609 (2d Cir. 1998).

With this preliminary showing made, courts generally consider the following nine factors to determine whether transfer is warranted:

> (1) the convenience of witnesses; (2) the convenience of parties;
> (3) the location of relevant documents and the relative ease of
> access to sources of proof; (4) the locus of the operative facts; (5)
> the availability of process to compel the attendance of unwilling
> witnesses; (6) the relative means of the parties; (7) the comparative
> familiarity of each district with the governing law; (8) the weight
> accorded to plaintiff's choice of forum; and (9) judicial economy
> and the interests of justice.

*Herbert*, 325 F. Supp. 2d at 285-86. "[A] party seeking a transfer under section 1404(a) bears the burden to make a 'clear' showing that a transfer is appropriate . . ., and must support the application with an affidavit containing detailed factual statements relevant to the factors set forth above, including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 987 (E.D.N.Y. 1991).

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion." *Herbert*, 325 F. Supp. 2d at 286. *Accord 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y.1994) ("[T]he convenience of both party and non-party witnesses may be the single most important factor in the analysis of whether one forum is more appropriate than a competing forum").

## B. The Balance of Convenience Analysis Weighs Strongly In Favor Of Transfer.

### 1. The Plaintiff's Choice of Forum

Although courts generally defer to the plaintiff's choice of forum, that "choice of forum is given less significant consideration in a . . . putative class action than in an individual action,"

*In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995), particularly where, as here, it involves plaintiffs scattered throughout the country. *See Cerussi v. Union Coll.*, 144 F. Supp. 2d 265, 270 (S.D.N.Y.2001). "The weight normally accorded to the plaintiff's choice of forum is diminished substantially where plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose." *800-Flowers, Inc.*, 860 F. Supp. at 131; *see Glass v. S&M NuTec, LLC*, 456 F. Supp. 2d 498, 504 (S.D.N.Y. 2006) (finding that the plaintiff's choice of forum bears little weight "in a putative class action involving plaintiffs who are scattered throughout the country").

In this putative class action, the plaintiffs are "scattered throughout the country"; not one of them resides in the district, or even this state. *Glass*, 456 F. Supp. 2d at 504. Leger is a New Jersey resident. (Compl. ¶¶ 8). Russell and Johnson reside in Georgia and Minnesota, respectively, and they resided in those states at the time that they were employed by the Company. *See* Garland Decl. Exs. B, ¶ 3, C, ¶ 2.

The material witnesses, the Company's principal place of business, and location of operative facts are in Michigan. Furthermore, the policies, practices, and decisions that are at the center of Hazard Pay Claims emanated from Ypsilanti, Michigan, which is also where plaintiffs' wages were calculated, and their pay statements were created. (Sanderlin Decl. at ¶¶ 4, 6); (Stockton Decl. at ¶ 6). Leger's choice of forum is thus not entitled to great weight.

### 2.  The Convenience of Witnesses and Parties.

In determining whether a transfer should be granted for the parties' convenience, "[t]he logical and relevant starting point is a consideration of the residence of the parties." *Hernandez*, 761 F. Supp. at 988. All of the Kalitta Air witnesses who could provide relevant testimony about the Hazard Pay Claims reside in Michigan:

- <u>Doyle C. Sanderlin</u>, Operations Director, Vice President and General Manager, is expected to testify that he negotiates and executes contracts to pick up and deliver cargo throughout the United States and around the world with private companies and the federal government.  He is expected to testify that all such contracts are negotiated and executed in Ypsilanti, Michigan, and were negotiated and executed in Michigan throughout Leger's employment with the Company.  He is also expected to testify that the flight schedules for these flights are set in Ypsilanti, Michigan, and were set in Michigan throughout Leger's employment with the Company. (Sanderlin Decl. at ¶¶ 3-6).  He is also expected to testify that Kalitta Air does not, and has not entered into contracts with the federal government that provide for hazard pay, and accordingly, Leger's Hazard Pay Claims are without merit.

- <u>Mark Nolff</u>, Director of Maintenance, is expected to testify that he oversees Kalitta Air's airplane mechanics.  He is expected to testify that he is responsible for determining the airplane mechanics' duties and responsibilities, and that he makes personnel decisions relating to the airplane mechanics.  He is also expected to testify that he is responsible for setting airplane mechanics' work schedules which determine their work location. He is expected to testify that throughout Leger's employment with the Company, decisions relating to airplane mechanics' job duties, work schedules and work locations were made in Ypsilanti, Michigan. Further, he is expected to testify that Leger and other airplane mechanics did not work out of one airport; their work location rotated based on where Kalitta Air's airplanes were departing or arriving.  (Nolff Decl. at ¶¶ 3, 5-7).

- <u>Laurie Stockton</u>, Director of Human Resources, is expected to testify that she is responsible for creating and maintaining employee personnel files, salary information and pay rates, and that at all times, she has worked out of Ypsilanti, Michigan.  She is also expected to testify that the Company's payroll department is located in Ypsilanti, Michigan, and employees' pay statements and W-2 wage and tax statements are prepared in Ypsilanti, Michigan.  (Stockton, Decl. at ¶ 4-6).

By contrast, none of the plaintiffs resides in the Eastern District of New York.  In *Glass*, the court found that the defendants' choice of venue, its headquarters, would not be any less

20

convenient for the parties, where, as here, the plaintiffs were "dispersed across the nation," and not one named plaintiff was a resident of New York. *Glass*, 456 F. Supp. 2d at 502. The court noted that, as here, the only connection that the plaintiffs had to the district was location of their counsel, a factor which is not afforded substantial consideration in considering a motion to change venue. *Id.* (citing *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 374 (S.D.N.Y. 2006) ("[T]he convenience of counsel is not an appropriate factor to consider on a motion to transfer."); *see Hernandez*, 761 F. Supp. at 987 ("In this regard, any inconvenience that might ensure to counsel is unpersuasive and generally not a factor to consider.").

Accordingly, this factor favors transfer as well.

### 3.   The Locus of Operative Facts.

Where a plaintiff asserts claims arising out of a contract, in determining venue, courts consider: (1) where the contract was negotiated or executed; (2) where it was to be performed; and (3) where the alleged breach occurred. *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir. 2005).

None of the events giving rise to the Hazard Pay Claims occurred in New York. First, Kalitta Air negotiated and executed contracts for the flights at issue at its Ypsilanti, Michigan headquarters. (Sanderlin Decl. at ¶¶ 4-6). Second, if Leger was, as claimed, wrongly denied hazard pay, he would have earned this pay overseas, when he entered an alleged "combat zone," not in New York. (Compl. ¶¶ 38, 39, 42 and 45). Third, in the event that a breach did occur, it would have occurred in Michigan, where the contract was executed and Company is headquartered, not at John F. Kennedy Airport. (Sanderlin Decl. at ¶¶ 3-4).

Consistent with Leger's claim in Count VII of the Complaint, if "[e]ach pay statement provided to [him] and the Hazard Pay Class," constituted fraud, such a claim also arose in

Michigan, where Leger's payroll was processed and his W-2 and tax statements were prepared. (Stockton Decl. at ¶ 6).

    As such, this factor also weighs heavily in favor of transfer.

    **4.**    **Interest of Justice and Judicial Economy.**

    The interest of justice standard also weighs in favor of transfer. According to the Federal Court Case Load Statistics, during the twelve month period ending in September 30, 2016, 4,680 cases were commenced in the Eastern District of Michigan in 2016 compared to 7,475 cases in this district, and 5,113 were pending in the Eastern District of Michigan compared to 10,099 in this district. *See Federal Judicial Caseload Statistics 2016*,

http://www.uscourts.gov/sites/default/files/data_tables/jb_c1_0930.2016.pdf.

    Taking into account that the districts have an equal number of judges (15), judges in this district have a larger case load (582 cases vs. 390 cases). *See Federal Judicial Caseload Statistics 2016, Comparison of Districts,*

http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2016.pdf.

    Given further that the median time of disposition for civil cases is longer in this district (9.1 months v. 8.4 months), (*id.)*, that the time from case's filing to its trial in this district is 33.7 months compared to 28.7 months in the Eastern District of Michigan, (*id.*), this factor weighs in favor of transfer. *See Hernandez,* 761 F. Supp. at 991 ("docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor for the Court to consider and is accorded 'some weight'").

    A transfer to the Eastern District of Michigan would not delay this action; the litigation is still in the early stages and no discovery has taken place, which further "weighs in favor of a transfer of venue." *United States v. Nature's Farm Prods*., 2004 U.S. Dist. LEXIS 8485, at *22 (S.D.N.Y. 2004).

5.   **Remaining Factors.**

The remaining factors are largely neutral, and thus do not tip the balance in favor of Leger's

choice of forum:

- Access to proof:  "[L]ocation of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents," *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007), however, the relevant documents are located in Michigan, where the relevant witnesses are located.

- Familiarity with applicable law: while the Hazard Pay Claims sound in the common law, to the extent that a contract was, as claimed, entered into which provided for hazard pay and breached, this contract would have been entered into in Michigan and would be governed by Michigan law; nevertheless, this factor is "accorded little weight on a motion to transfer." *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 760 (S.D.N.Y. 1980).

- Means of the parties: this factor is neutral.  Johnson and Russell will have to travel regardless of where the case is to be tried, as will Leger, depending on where in New Jersey he resides.  On the other hand, it would be significantly less expensive for Defendants to litigate the case where their place of business is located.  *Glass*, 456 F. Supp. 2d at 504.

The above analysis shows that transfer to the Eastern District of Michigan is warranted.

23

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that their motions be granted.

Dated: New York, New York
     April 7, 2017

                     EPSTEIN BECKER & GREEN, P.C.

                     By:  */s/ David W. Garland*
                         David W. Garland
                         Shira M. Blank
                     250 Park Avenue
                     New York, New York  10177-1211
                     (212) 351-4500
                     *Attorneys for Defendants*
                     *Conrad Kalitta and Kalitta Air*